{¶ 1} Relator, Ronald Hall, has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its orders denying his motion for leave to take a doctor's deposition and denying his application for permanent total disability ("PTD") compensation, and to enter an order finding that he is permanently and totally disabled or permission to take the deposition.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court grant a limited writ and return the matter to the commission to vacate its denial of PTD compensation and to issue a new order that complies with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. (Attached as Appendix A.) Both relator and the commission have filed objections to the magistrate's decision.
 {¶ 3} The commission argues in its objection the magistrate erred in finding the commission failed to comply with Noll and Stephenson by failing to include in its discussion of relator's mental capacity Dr. Norman Berg's conclusions regarding relator's intelligence. The magistrate found the commission could not make an unqualified statement that it relied upon Dr. Berg's report, yet fail to address Dr. Berg's conclusion that relator's intelligence was very limited and his functioning was at a borderline or dull normal level. We agree with the magistrate. Although we recognize the commission did discuss relator's mental capacity with regard to sustained remunerative employment, it did not specifically address Dr. Berg's conclusions on this matter. While specifically endeavoring to outline all of Dr. Berg's other conclusions in his report, the commission then inexplicably neglected to mention anything about Dr. Berg's conclusions on relator's intelligence and functioning. Thus, we find the commission's objection without merit.
 {¶ 4} Relator argues in his objections the magistrate erred in finding: (1) the commission did not abuse its discretion in refusing relator's request to take the deposition of Dr. Amendt; (2) that Dr. Amendt's report constituted some evidence upon which the commission could rely; (3) that the report of the commission's psychologist Dr. Berg constitutes some evidence upon which the commission could rely to deny PTD compensation; (4) that the commission did not violate State ex rel. Fultz v. Indus. Comm. (1994), 69 Ohio St.3d 327; and (5) the commission did not abuse its discretion in failing to discuss relator's unsuccessful rehabilitation attempt. Relator raises no new issues and merely disagrees with the magistrate. We have reviewed relator's objections and the magistrate's analysis and agree with the magistrate's reasoning on these issues. Therefore, relator's objections are without merit.
 {¶ 5} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's and the commission's objections, we overrule their objections and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and grant a limited writ of mandamus returning this matter to the commission to vacate its denial of PTD compensation and to issue a new order that complies with Noll and Stephenson, supra.
Objections overruled; limited writ granted.
TYACK and DESHLER, JJ., concur.
 IN MANDAMUS {¶ 6} Relator, Ronald Hall, filed this original action seeking a writ of mandamus compelling respondent Industrial Commission of Ohio to vacate its orders that denied leave to take a doctor's deposition and that denied compensation for permanent total disability ("PTD"), and to issue an order granting the requested compensation or permission to take the deposition.
Findings of Fact:
 {¶ 7} 1. In 1989, Ronald Hall ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for numerous conditions of the back and neck. He underwent surgeries, and his claim was additionally allowed for dysthymic disorder and somatoform pain disorder.
 {¶ 8} 2. In June 1991, a rehabilitation plan was designed for claimant that involved a vocational evaluation, assistance with a job search, and a course on minimizing pain and stress.
 {¶ 9} 3. In June 1991, claimant was examined by Bernard Bacevich, M.D., who found limited lumbosacral motion but no cervical limitation. Neurological examination showed no involvement of the extremities. Dr. Bacevich assessed a 15% permanent impairment based on the physical conditions. He stated that the conditions prevented claimant from returning to drywall installation and also prevented "other types" of employment. Dr. Bacevich recommended that claimant participate in the rehabilitation services that were scheduled to begin later that month.
 {¶ 10} 4. In April 1996, a form was completed by John Roberts, M.D., estimating claimant's physical capacities. Dr. Roberts opined that claimant could lift up to five founds frequently. He opined that claimant could stand/walk for four hours per day and could sit for four hours per day, but could not perform "repetitive" twisting or rotation of the trunk. Dr. Roberts estimated that claimant could engage in combined sitting/standing/walking for a total of six hours. He found no restrictions on reaching, grasping, fine manipulation, foot controls, and turning the head/neck. Dr. Roberts stated that claimant must avoid bending, stooping, crouching, kneeling, crawling, and twisting.
 {¶ 11} 5. In January 1999, the Social Security Administration granted disability benefits to claimant based on his testimony and a psychologist's testimony regarding claimant's dysthymia and chronic depression.
 {¶ 12} 6. In January 2000, claimant filed a PTD application, indicating that he was forty-two years old, completed the eighth grade, and had done construction work, specializing in drywall installation.
 {¶ 13} 7. Claimant relied on various medical opinions and filed a report from Kenneth Manges, Ph.D.
 {¶ 14} 8. In support of his application, claimant filed a November 1999 report from Walter Broadnax, M.D., who noted that claimant reported severe pain, including pain that radiated down both legs. Claimant explained that, on a pain scale from one to ten, with ten being the worst pain imaginable, his pain was routinely at level ten. During the examination, Dr. Broadnax noted lumbar muscle spasm. Motor strength was 5/5 and muscles had normal bulk and tone. The senses were intact to pinprick and light touch. Plantar reflex was flexion, and deep tendon reflex was +2. Dr. Broadnax described range of motion as follows: "* * * [L]umbar flexion to be 10 degrees, lumbar extension to be 5 degrees, left lateral flexion is 10 degrees, right lateral flexion is 10 degrees, left lateral rotation is 10 degrees, right lateral rotation is 10 degrees." Dr. Broadnax also discussed claimant's educational background and noted that Dr. Manges had found claimant to be functionally illiterate. He assessed a whole-person impairment of 32% based on the orthopedic conditions, and set forth the following physical capacities: that claimant could stand for one hour, sit for one hour, and walk for one hour. He opined that claimant could lift up to ten pounds for one hour, and could operate foot controls for up to one-third of the time. Dr. Broadnax opined that claimant could use his upper extremities for handling/seizing/turning for up to one-third of the time, and could reach overhead for up to one-third of the time. He stated that claimant could "not at all" kneel, climb stairs or ladders, and reach at waist or floor levels, or crouch, stoop or bend. Accordingly, Dr. Broadnax opined that claimant was permanently and totally disabled.
 {¶ 15} 9. On May 3, 2000, claimant was examined on behalf of the commission by Norman Berg, Ph.D., who found that claimant could relate adequately to others in a work setting and that claimant's ability to cope with routine job stress was "mildly to moderately" impaired. Dr. Berg observed that claimant functioned in a "moderately slow" manner and that his ability to sustain his level of activity was "mildly to moderately" impaired. He rated claimant's intelligence as borderline to dull normal, and he observed that claimant was able to understand and follow verbal directions. Dr. Berg assessed 20% impairment from the somatoform pain disorder and 15% for the dysthymia. He concluded that, based only on the impairment from the allowed psychological conditions, claimant could meet the basic demands required to perform sustained remunerative employment.
 {¶ 16} 10. On May 10, 2000, claimant was examined on behalf of the commission by Wayne Amendt, M.D., who submitted a report that was received by claimant's counsel on May 31, 2000. (A copy of that report does not appear to be in the record.)
 {¶ 17} 11. On June 2, 2000, a hearing administrator sent a memorandum, asking the medical section to have Dr. Amendt review his narrative report, because he had apparently sent a draft report rather than a final one, based on the appearance of the section of his report regarding evidence in the file.
 {¶ 18} 12. On or about June 6, 2000, claimant filed a motion requesting permission to take Dr. Amendt's deposition, noting that the subject report was "received by claimant's counsel on 5/31/00."
 {¶ 19} 13. The medical section of the commission received a report from Dr. Amendt on June 20, 2000 (according to a date stamp on the copy in the stipulated evidence). In this report, Dr. Amendt described the examination as follows:
 {¶ 20} "Physical Examination:
 {¶ 21} "On physical examination, claimant is able to undress and assume the seated position on the exam table without difficulty. In the seated position on the exam table, straight leg raise is negative, negative sciatic stretch and negative flip test. Reflexes, patellar 3+, Achilles 3+. Calves measure equally at 15" bilaterally. Strength in the EHL and ankle dorsiflexors is 5/5 and symmetrical. He assumes the supine position, rolling to side and in this position straight leg raise causes back pain only at 40° of hip flexion on the right and 60° of hip flexion on the left. Hip internal and external rotation is normal. In the supine position. Faber test does cause pain over the right SI joint, however there is no pain over the left SI joint. He rolls to side to come to the upright position and in the standing position he is able to toe and heel walk without evident weakness. Range of motion lumbar spine 0°, forward flexion 20°. Right and left lateral bending 10° and rotation 20° right and left.
 {¶ 22} "Cervical spine range of motion, forward flexion is 60°, extension 50°, rotation to the right 80°, rotation to the left 80°, lateral bending is 30° right, 30° left. Reflexes, biceps and triceps 2+ and equal. He has normal strength in the radial median and ulnar innervated musculature. There is atrophy. There is no decrease sensation over the C-6, 7 or C-8 dermatomes. Shoulder strength is normal in terms of deltoid, biceps and triceps, internal and external rotators. There is no tenderness noted over the thoracic spine area."
 {¶ 23} Dr. Amendt then concluded as follows:
 {¶ 24} "Opinion:
 {¶ 25} "The claimant has reached a state of maximum medical improvement. His whole person impairment, based upon AMA Guides to the Evaluation of Permanent Impairment, Edition IV is rated as follows: Upper back and neck strain — 5% whole person DRE Cervicothoracic Category II. Back injury, lumbosacral strain, acquired spondylolisthesis L-5, S-1 and failed back syndrome and pseudoarthrosis of prior fusion L-4, S-1 — Table 75 Section IV — 15%, Table 81 — 11% + 7%, Table 82 — 3% + 3%, Table 83 — 0% for a total whole person impairment rating of 37% based upon AMA Guides to the Evaluation of Permanent Impairment, Edition IV. His condition is permanent and he has reached maximum medical improvement. The claimant is incapable of resuming his former position of employment but would be capable of engaging in sustained remunerative work activity in a sedentary setting."
 {¶ 26} In addition, on the capacities checklist accompanying the report (received by the commission initially in May 2000), Dr. Amendt estimated that claimant could sit for five to eight hours, stand for zero to three hours, and walk for zero to three hours. Lifting was limited to ten pounds, for zero to three hours. Dr. Amendt stated that claimant could not climb stairs or ladders, and could not crouch, stoop, bend or kneel. He could operate foot controls for up to one-third of the time, and could reach overhead for up to one-third of the time. Reaching at waist level was unrestricted, but reaching at knee and floor levels was prohibited.
 {¶ 27} 14. In July 2000, a vocational report was submitted on behalf of the commission by William Cody. Claimant obtained permission to take Mr. Cody's deposition, during which Mr. Cody repudiated one or more of the opinions set forth in his report. Among other things, Mr. Cody testified that some bending was necessary to perform sedentary work.
 {¶ 28} 15. The commission denied permission to take Dr. Amendt's deposition:
 {¶ 29} "The Staff Hearing Officer finds that there is no substantial disparity between the report of Dr. Amendt and other medial evidence on file concerning the issue of the claimant's ability to engage in sedentary work activity. The opinion of the vocational expert Mr. Cody is not sufficient to call into question the opinion of Dr. Amendt regarding the claimant's ability to engage in sedentary work activity from a medical point of view."
 {¶ 30} 16. In February 2001, the commission denied PTD compensation:
 {¶ 31} "This order is based on the medical reports of Dr. Amendt and Dr. Berg.
 {¶ 32} "* * * Dr. Amendt opined that a claimant is unable to return to his former position of employment as a result of the allowed orthopedic conditions. He further opined that the claimant is capable of performing other forms of sustained remunerative employment, characterized as sedentary employment. Dr. Amendt completed an Occupational Activity Assessment Form which he attached to his medical report. On that form, he indicated that the claimant can sit up to 8 hours in a workday, stand up to 3 hours in a workday and walk up to 3 hours in a workday. He further indicated that the claimant can occasionally lift, carry, push or pull objects weighing up to 10 pounds. Dr. Amendt noted that the claimant is unrestricted in his ability to handle objects and reach at waist level. He further indicated that the claimant can occasionally use foot controls and reach overhead. Finally, Dr. Amendt noted that the claimant is unable to climb stairs or ladders, crouch, stoop, bend, kneel, and reach at knee level or from floor level.
 {¶ 33} "* * * Dr. Berg opined that the allowed psychological conditions do not prevent the claimant from performing his former position of employment or any other form of sustained remunerative employment. Dr. Berg opined that the claimant is able to understand and follow simple verbal directions. He further opined that the claimant's ability to maintain his attention and concentration is mildly impaired by the allowed psychological conditions. He further opined that the claimant is able to adequately relate to others in a work setting, although he functions in a moderately slow manner. Psychologically, Dr. Berg opined that the claimant's ability to sustain his level of activity is mildly to moderately impaired and his ability to cope with routine job stress is mildly to moderately impaired.
 {¶ 34} "The Staff Hearing Office finds that the claimant is unable to return to his former position of employment as a result of the allowed orthopedic conditions in the claim. The Staff Hearing Officer further finds that the claimant is capable of performing sedentary employment with the limitations and capabilities as set forth in the medical reports and Occupational Activity Assessment Forms completed by Dr. Amendt and Dr. Berg.
 {¶ 35} "The Staff Hearing Officer finds that the claimant is presently 43 years of age. The Staff Hearing Officer finds the claimant's age to be an asset which would enable him to adapt to new work rules, processes, methods, procedures and tools involved in a new occupation. The Staff Hearing Officer further finds that the claimant's age would be an asset in enabling him to compete with others for available openings in the job market. The Staff Hearing Officer finds that the claimant's formal education has been reported to be between the 8th and 10th grade by the claimant. The claimant noted on the Application for Permanent Total Disability Compensation that he has an 8th grade education. However, he has reported a 9th and 10th grade education to various examiners, notably Dr. Tarlano on 12/12/90, Dr. Farrell on 02/26/92, Dr. Miller on 07/20/95 and Dr. Manges on 10/14/96 and 11/20/00. Equally contradictory are the testing results reported by Dr. Manges. Dr. Manges performed testing on the claimant to determine his academic functioning as reported on 11/14/96. At that time, Dr. Manges stated that the claimant reads at a 3rd grade equivalent, writes at a 2nd grade equivalent and performs mathematics at a 5th grade equivalent. More recently, in a 11/20/00 report, Dr. Manges stated that the claimant reads at a 5th grade equivalent, writes at a 3rd grade equivalent and performs mathematics at a 5th grade equivalent. Absent any explanation as to the variance in the academic skills, the Staff Hearing Officer finds that the claimant has improved his academic functioning, although it continues to be in the marginal to limited range. The Staff Hearing Officer finds that the claimant's education and academic functioning would not be assets to the claimant in performing entry-level occupations requiring clerical competency. The Staff Hearing Officer finds that the claimant's education and academic functioning would not preclude him from performing entry-level unskilled work and participating in on-the-job training to acquire basic work skills. The Staff Hearing Officer further finds that the claimant's work history has been that as a drywaller, where the claimant functioned in the position of `working foreman.' The Staff Hearing Officer finds that the claimant acquired a number of skills and abilities which would be beneficial to him and transferable to other employment activities within his physical restrictions. Such skills would include the ability to measure, mark and cut lines, use a tape measure and marking device as well as engage in reasoning and problem solving. The Staff Hearing Officer further finds that these abilities and aptitudes indicate that the claimant has the ability to process information and make judgments, reason and deal with others, as well as do precise work within tolerances. The Staff Hearing Officer finds that such skills would be an asset to the claimant in engaging in re-training. Furthermore, the Hearing Officer finds that although the claimant has tested at low levels on aptitude testing, his past work experience suggests that he is able to perform a wide range of tasks necessary to engage in unskilled work activity.
 {¶ 36} "The Staff Hearing Officer finds that the claimant's past work history is a reliable measure and indicates that the claimant has worked productively in the past and has potential for employment in the future. The Staff Hearing Officer further finds that the claimant has the ability to engage in a number of employment activities based upon his physical restrictions considering his age, education, academic functioning and work experience. In denying his application for Social Security Disability benefits, the Administrative Law Judge found that the claimant is able to perform the occupations of sedentary assembler and production inspector. The Judge made findings in her order (which is contained in the claim file) that the claimant was limited to sedentary work with the additional limitations that the claimant would need to change position every two hours and not perform tasks which require bending or stooping. The Judge relied on the testimony of a vocational expert who named jobs the claimant could perform given his residual functional capacity taking into account the claimant's age, educational background, and employment history. The Staff Hearing Officer finds that the claimant would be capable of performing those occupations. Accordingly, the Staff Hearing Officer finds that the claimant is able to engage in sustained remunerative employment."
 {¶ 37} 17. Claimant requested reconsideration, which the three members of the commission unanimously denied.
Conclusions of Law:
 {¶ 38} In this original action in mandamus, claimant contends that the commission abused its discretion in refusing his request to take Dr. Amendt's deposition. In addition, in regard to the denial of PTD compensation, claimant makes the following arguments: (1) that the report of Dr. Berg does not constitute "some evidence" on which the commission could rely and must be removed from evidentiary consideration; (2) that the report of Dr. Amendt does not constitute "some evidence" on which the commission could rely and must be removed from evidentiary consideration; (3) that the commission abused its discretion and violated State ex rel. Fultz v. Indus. Comm. (1994), 69 Ohio St.3d 327, in failing to mention the opinions expressed by Mr. Cody; and (4) that the commission abused its discretion in failing to mention an unsuccessful rehabilitation attempt that claimant made.
 {¶ 39} In regard to medical reports, the magistrate agrees that a medical report cannot constitute "some evidence" if it is internally inconsistent or fatally ambiguous. E.g., State ex rel. Owens-Corning Fiberglas Corp. v. Indus. Comm. (1994), 70 Ohio St.3d 263; State ex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649; State ex rel. Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445; State ex rel. Malinowski v. Hordis Bros. Inc. (1997), 79 Ohio St.3d 342; State ex rel. Chrysler Corp. v. Indus. Comm. (1998), 81 Ohio St.3d 158.
 {¶ 40} In regard to depositions, R.C. 4123.09 provides that parties may take depositions in workers' compensation claims with permission from the bureau or as ordered by the commission. The administrative code sets forth a procedure for requesting a deposition and states that the hearing administrator will grant a "reasonable" request. Ohio Adm. Code 4121-3-09(6)(c). The code further states that the factors for considering the reasonableness of a request for deposition "include whether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of others, and whether the request is for harassment or delay." Ohio Adm. Code 4121-3-09(6)(d). See, also, Williams v. Moody's of Dayton (1982), 1 Ohio St.3d 238.
 {¶ 41} In State ex rel. Cox v. Indus. Comm. (2002),95 Ohio St.3d 353, the Ohio Supreme Court recently reviewed the administrative rule and pointed out that, at the time the commission is determining whether to grant leave to take a deposition, it cannot know which medical reports will be relied upon to the exclusion of others. In addition, the court clarified the proper standard for granting deposition requests. The court explained that substantial disparity between percentage figures can be irrelevant when the issue for determination is not the percentage of disability. Id. at 355. Moreover, the court noted that substantial disparities in the evidence are commonplace and that, in a disputed disability matter, one of the primary purposes of the hearing is to present and debate the relative strengths and weakness of the medical reports. The court further observed that the enumerated factors for determining the reasonableness of a deposition were not exclusive and that, in some cases, it is more appropriate to consider whether there is a defect in the report that can be cured by a deposition and whether the hearing itself is an equally reasonable option for resolving the questions.
 {¶ 42} In the present action, the magistrate finds no disparity in the medical reports of a type that would require the commission to order a deposition. Dr. Amendt's clinical findings were not substantially different from other doctors' findings during the same period of time, and the differences that did appear were subject to explanation and discussion in the hearing. To require a deposition as a matter of law, there must be a divergence that cannot be attributed to the difference in a person's symptoms from day to day, to the different presentations a person may give to different examiners, or to ordinary bias that might be expected from examiners hired by different parties. In short, the disparity must be more than the ordinary difference of opinion that doctors have. Further, there are no defects in Dr. Amendt's report — no inexplicable statements, no ambiguity on crucial issues, no patent contradictions — that can be cured in a deposition. Indeed, even the existence of a fatal inconsistency does not automatically require a deposition, as the hearing officer can simply disqualify a report that is defective as a matter of law. Id. at 357. Examining all the factors, the magistrate concludes that the commission was within the range of its discretion to deny leave to take Dr. Amendt's deposition.
 {¶ 43} Next, the magistrate addresses the issues relating to the PTD order. The first question is whether there are fatal defects in the reports of Drs. Berg or Amendt such that the commission was barred from relying on the reports as a matter of law. The magistrate finds none. There are no contradictions or ambiguities that would bar the reports from evidentiary consideration. Dr. Berg made clear that, when he stated his opinion on work restrictions, he was relying solely on the allowed psychological conditions. He did not consider the effect of nonmedical factors such as education and intelligence. Therefore, while Dr. Berg's finding about claimant's limited intelligence was within his area of expertise as a psychologist, that finding did not contradict his opinion regarding work restrictions caused by the allowed conditions.
 {¶ 44} Nonetheless, although there is no fatal flaw in Dr. Berg's report, the magistrate concludes that the commission's lack of discussion of claimant's mental capacity, as found by Dr. Berg, was insufficient to satisfy State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Although the commission was not required to rely on Dr. Berg's report, it chose to do so, and that report stated that claimant's intelligence was very limited; Dr. Berg concluded that claimant was functioning at a "borderline level" or in the dull normal level. However, the commission ignored that finding in its discussion of the vocational factors.
 {¶ 45} The magistrate concludes that the commission, having made an unqualified statement that it relied on Dr. Berg's report and having a duty to discuss vocational factors such as intelligence and ability to learn new skills, had a duty to address the factor of claimant's low intelligence as found by Dr. Berg or at least to explain why it rejected that part of Dr. Berg's opinion. The magistrate does not suggest that the commission cannot choose to accept part and reject part of a report. The conclusion is simply that, when the commission chooses to adopt a report without qualification, and then ignores crucial opinions in the report that are relevant to issues the commission is obliged to discuss, then it has failed to comply with its duty to provide an adequate rationale for its decision.
 {¶ 46} Next, the magistrate finds no abuse of discretion in the absence of any reference in the order to the report or deposition of Mr. Cody. The commission had no duty to cite all the evidence or discuss all the evidence. It was required to cite only the evidence on which it relied and had no obligation to identify the rejected evidence or explain why it was rejected. See, e.g., State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575; State ex rel. Lovell v. Indus. Comm. (1996),74 Ohio St.3d 250. The commission was not required to rely on or discuss Mr. Cody's opinions, whether in his written report or deposition.
 {¶ 47} Finally, as to the alleged omission of evidence demonstrating claimant's unsuccessful attempt at rehabilitation, the evidence in the file regarding rehabilitation is too sketchy to impose a duty on the commission to discuss that factor. The evidence before the court does not demonstrate how rehabilitation progressed, whether it was completed, or why it was unsuccessful, and the commission's lack of discussion was, therefore, not an abuse of discretion.
 {¶ 48} Based on the foregoing, the magistrate recommends that the court grant a limited writ and return this matter to the commission to vacate its denial of PTD and to issue a new order that complies with Noll and Stephenson, supra.